Edward J. **KLEIN**, Appellant,

v.

**SPORTING GOODS, INC.**, et al., Appellees.

No. B14–88–00182–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 27, 1989.

Rehearing Denied June 8, 1989.

Jeff Crane, Tamara C. Sampson, Houston, for appellant.

Joseph O. Slovacek, Wesley S. Coddou, Houston, for appellees.

Before MURPHY, ROBERTSON and SEARS, JJ.

## OPINION

MURPHY, Justice.

Edward Klein appeals from a judgment holding him liable for the debts of the Gun Exchange, a corporation for which Klein was the sole shareholder. In twenty-two points of error Klein asserts (1) the evidence was legally and factually insufficient to support a finding of constructive fraud; (2) the evidence was legally and factually insufficient to support an award of damages or attorney's fees; (3) the special issues submitted were not supported by appellees' pleadings; (4) the special issues failed to include causation as an element of constructive fraud; (5) the special issues were improperly worded; (6) the testimony of certain witnesses should have been excluded; and (7) evidence of Klein's use of corporate funds to pay personal debts should have been excluded. We affirm.

In May 1985, Ed Klein was the sole shareholder, director, and chief executive officer of the Gun Exchange. The Gun Exchange operated as a retail firearms dealership. The inventory of the Gun Exchange had been pledged as security for a $622,500 debt owed to InterFirst Bank. Appellant also owed $231,484.60 to appellees, Sporting Goods, Inc., Hill Country Wholesale, Inc., Gene Sears Supply Co. of Texas, Inc., Browning, and Zeiss Optical. The debts owed to appellees were unsecured.

On May 20, 1985, InterFirst Bank notified appellant of its intention to foreclose on the inventory of the Gun Exchange and sell it at public auction. InterFirst Bank further advised appellant that, pursuant to a personal guaranty, he would be responsible for any deficiency following the sale. Appellant testified he was certain there would be a deficiency if the inventory was sold. Appellant immediately incorporated the Gun Store for the purpose of purchasing the assets of the Gun Exchange at the foreclosure sale.

Before the foreclosure sale, appellant obtained a $650,000 line of credit from CharterBank on behalf of the Gun Store. The line of credit was to be secured by the assets of the Gun Exchange which appel-

lant intended to purchase at the foreclosure sale. Appellant also assigned a life insurance policy, which originally belonged to the Gun Exchange, to CharterBank as additional security on the line of credit for the Gun Store.

The day of the sale appellant purchased the assets of the Gun Exchange for $650,-000. The highest bid before appellant's bid was $175,000. Further, appellant testified that the inventory was valued at only $400,000. However, appellant admitted that if the $175,000 bid had been accepted, he would have been personally liable for the resulting deficiency.

After the foreclosure sale, the only asset of the Gun Exchange available to pay the trade creditors was the corporation's bank account, which contained approximately $12,000. That money was never paid to appellees. It was paid to appellant for loans he allegedly made to the Gun Exchange. Following the sale, the Gun Store began operating as a retail firearms dealer with the inventory purchased from the foreclosure sale, in the same location and with the same personnel as the Gun Exchange.

Appellees subsequently filed suit on a sworn account against appellant individually, the Gun Exchange, the Gun Store, and EJK Devco, Inc. In addition to their allegations that the Gun Exchange owed appellees $231,484.60, appellees alleged that appellant used the corporate fiction of the Gun Exchange to perpetrate a fraud, thus requiring that the corporate fiction be disregarded. The Gun Exchange failed to answer the lawsuit and a default judgment was rendered against it in the amount of $231,484.60. The default judgment became final when the Gun Exchange was severed from the suit. Immediately before trial, appellees non-suited the Gun Store and EJK Devco, Inc., and proceeded against appellant under a constructive fraud theory. The jury determined that appellant used the corporate fiction of the Gun Exchange as a sham to perpetrate a fraud on appellees. Thus, the corporate fiction was disregarded and appellant became liable for debts and obligations of the Gun Exchange. The primary debt of the Gun Exchange was the default judgment previously rendered in favor of appellees.

In his first ten points of error, appellant claims the evidence was factually and legally insufficient to support the jury's finding of constructive fraud. The corporate fiction normally insulates shareholders, officers, and directors from liability for corporate obligations, but will be disregarded, even though corporate formalities have been observed and individual property has been kept separate, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. Specifically, the corporate fiction is disregarded when the fiction is used as a means of perpetrating fraud. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986). Neither fraud nor an intent to defraud need be shown as a prerequisite to disregarding the corporate entity; it is sufficient if recognizing the separate corporate existence would bring about an inequitable result. *Id.* at 272. Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of the tendency to deceive others, to violate confidence, or to injure public interests. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964).

Appellant argues there is no evidence, or, in the alternative, insufficient evidence that he violated any duty owed to appellees. Appellant contends the evidence shows he incorporated the Gun Store to continue the business of the Gun Exchange and failed to pay his trade creditors. In doing so, appellant argues he breached no duty. In support of his position appellant cites section 9.503 of the Texas Business and Commerce Code Annotated (Vernon Supp.1989) * as the extent of his obligations and duties in his business relationships. However, section 1.203 of the Business and Commerce Code provides that every contract or duty within the Business and Commerce Code

* Section 9.503 provides that the debtor may be required by the secured party to assemble the collateral and make it available to the secured party.

imposes an obligation of good faith in its performance or enforcement. We will examine the record to determine whether the evidence supports a breach of appellant's duty of good faith to appellees. In doing so, we take "a flexible fact-specific approach focusing on equity." *Castleberry,* 721 S.W.2d at 273.

With regard to legal insufficiency points, we will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all conflicting evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

In considering appellant's insufficient evidence points, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis,* 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). We may not substitute our judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ Under the facts in this case, there is some evidence to support the jury's finding of constructive fraud. In considering all the evidence, the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. The jury could well have concluded that the Gun Store was merely a continuation of the Gun Exchange, with the foreclosure sale being used as a method to avoid creditors. Therefore, the evidence was legally and factually sufficient to support the jury's finding of constructive fraud, allowing a judgment disregarding the corporate fiction, and holding appellant personally liable for the debts of the Gun Exchange. Points of error one through ten are overruled.

In his sixteenth point of error appellant claims the special issues submitted to the jury were improper because they did not require the jury to find that appellant breached a legal or equitable duty. Appellant has waived any error in the submission of the issues not specifying a duty by not properly objecting to the issues on those grounds. *Brown v. American Transfer & Storage,* 601 S.W.2d 931, 938 (Tex.1980). Point of error sixteen is overruled.

■ In his eleventh through fourteenth points of error appellant claims the evidence is legally and factually insufficient to support an award of damages and attorney's fees. In his fifteenth point of error appellant claims the trial court erred in submitting the special issues on constructive fraud to the jury because the issues failed to include causation as an element of appellees' cause of action. In this case no damage or attorney's fee issues were submitted to the jury. Those issues were decided by the default judgment, which reduced to judgment the debt owed to appellees by the Gun Exchange. The default judgment also awarded $75,000 in attorney's fees. Therefore, we must determine whether appellant may be held responsible for the debt of the Gun Exchange created by the default judgment.

The jury found that appellant committed constructive fraud by using the corporate fiction as a sham to perpetrate a fraud on appellees. In doing so, the jury found that the corporate fiction should be disregarded. When the corporate fiction is disregarded, the individual, in this case appellant, becomes identical with the corporation, and the individual stands liable for the acts and obligations of the corporation. *American Petrofina Co. of Texas v. Crump Business Forms, Inc.,* 597 S.W.2d 467, 472 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.).

Although *American Petrofina* speaks in terms of alter ego instead of constructive fraud, the analysis similarly applies when the corporate fiction is disregarded through a finding of constructive fraud. Alter ego and constructive fraud are different means to the same end *i.e.,* disregard of the corporate fiction. *Castleberry,* 721

S.W.2d at 272. Therefore, because the corporate fiction has been disregarded, appellant is liable for the debts of the Gun Exchange. The specific debt involved here is the $231,484.60 debt reduced to judgment when the Gun Exchange failed to answer appellees' lawsuit. The trial court did not err in failing to submit damage issues because appellees' damages were the debt owed by the Gun Exchange. Points of error eleven through fourteen are overruled.

By the same token no causal relationship between appellant's actions and appellees' losses need be shown. By proving constructive fraud appellees succeeded in disregarding the corporate fiction and holding appellant liable for the debts of the Gun Exchange. Point of error fifteen is overruled.

■ In his seventeenth point of error appellant alleges that the special issues were not supported by appellees' pleadings. Appellant claims appellees' second amended petition did not give fair notice of their cause of action, and that the proof presented at trial varied from the allegations in the pleadings.

A pleading is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982). Pleadings give fair and adequate notice when they are specific enough that an opposing attorney, with the pleadings before him, can ascertain the nature and basic issues of the controversy and the testimony probably relevant. *Sage v. Wong*, 720 S.W.2d 882, 884 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

Appellees' second amended petition states:

> Plaintiffs' would show that Defendants' conduct as set out above is grossly unfair and tends to deceive others, violate confidence and injure public interest so as to amount to constructive fraud. Plaintiffs have suffered damages therefrom and now sue therefor.
>
> *    *    *    *    *    *

In support thereof Plaintiffs would show that EDWARD J. KLEIN is a majority shareholder in THE GUN EXCHANGE OF HOUSTON, INC. as well as THE GUN STORE, INC. and EJK DEVCO, INC. THE GUN STORE, INC. purchased the assets of THE GUN EXCHANGE OF HOUSTON, INC. and commenced business in the same location using the same assets. Defendants' actions in this regard resulted in leaving THE GUN EXCHANGE OF HOUSTON, INC. without sufficient assets to satisfy its trade debts.

Appellees' second amended petition gave appellant fair notice that he would have to defend against allegations that he had used the foreclosure sale to strip the Gun Exchange of its assets and used the Gun Store to carry on the business of the Gun Exchange free of trade debts. We conclude that appellees' pleading is specific enough to give appellant notice of the nature and basic issues of appellees' cause of action. Further, a review of appellant's motion for summary judgment clearly demonstrates appellant's understanding of the allegations against him.

Appellant next contends that a fatal variance exists between appellees' pleading and proof. Appellant claims appellees' pleadings alleged that two specific acts constituted constructive fraud. First, that appellant attempted to eliminate his personal liability for the debts of the Gun Exchange through personal guarantees of notes and obligations of the Gun Exchange. Second, that appellant manipulated existing corporate assets of the Gun Exchange to satisfy obligations to EJK Devco and the Gun Store to the exclusion of trade creditors. Appellant claims appellees' proof fatally varied from those pleadings.

To constitute a fatal variance between the pleadings and proof the divergence must be substantial, misleading, and prejudicial. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 187 (Tex.1977). Appellees produced evidence that appellant incorporated the Gun Store for the purpose of buying the assets of the Gun Exchange. Appellees also produced evidence that appellant's action deprived the Gun Exchange of all its assets except a bank account

containing approximately $12,000. Considering this evidence with all the evidence in the case, and taking the pleadings as a whole, we find no fatal variance between the pleadings and proof. Point of error seventeen is overruled.

In his eighteenth and nineteenth points of error appellant claims the trial court erred in overruling his motion for new trial and judgment nunc pro tunc because special issues one through five were improperly submitted to the jury. Special issue number one reads:

Do you find from a preponderance of the evidence that of the evidence that the Defendant, Edward J. Klein, perpetrated a fraud upon the Plaintiff, Sporting Goods, Inc., by using The Gun Store, Inc., to purchase merchandise of the Gun Exchange at the foreclosure sale of June 12, 1985, in such a manner as to prejudice Plaintiff's ability to satisfy its trade accounts with the Gun Exchange?

Special issues numbers two through five read exactly as special issue number one except the other four appellees' names were substituted for "Sporting Goods, Inc." Appellant claims the added phrase "that of the evidence" shifted the burden of proof away from appellees and constituted a comment on the weight of the evidence. Appellant did not object to special issues one through five on the grounds that the issues improperly shifted the burden of proof or that they were comments on the weight of the evidence. By failing to object on those grounds appellant has waived any such complaint on appeal. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978). Points of error eighteen and nineteen are overruled.

■ In his twentieth point of error appellant claims the trial court erred in admitting the testimony of three witnesses who were not previously identified in response to interrogatories. Prior to trial, appellant submitted interrogatories to appellees asking appellees to list all persons with relevant knowledge of the facts. Appellees *identified* their attorney and each of the parties. At trial, appellant objected to the testimony of Lonny Onishi and Thomas

Hargrave, and the deposition testimony of Kent Averett on the grounds that the witnesses were not disclosed in answer to appellant's interrogatories. The trial judge overruled appellant's objections and allowed the witnesses' testimony.

Error may occur when a trial court admits testimony of witnesses over a timely objection that such witnesses were not previously identified in response to a proper interrogatory. *Morrow v. H.E.B.,* 714 S.W.2d 297, 298 (Tex.1986). However, the testimony of unidentified witnesses is admissible if the trial court finds that good cause exists to allow the witness to testify. *Yeldell v. Holiday Hills Retirement & Nursing Ctr., Inc.,* 701 S.W.2d 243, 246 (Tex.1985). The burden of establishing good cause is on the party offering the evidence. *E.F. Hutton & Co. v. Young-blood,* 741 S.W.2d 363, 364 (Tex.1987).

In this case, the record does not indicate that appellees satisfied their burden to show good cause. The trial court erred in admitting the testimony of the unidentified witnesses. However, when a trial court errs in allowing the testimony of an undisclosed witness into evidence without a showing of good cause, we must review the record and determine whether the trial court's action constituted reversible error. *McKinney v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 772 S.W.2d 72, 75 (Tex.1989); *Gee v. Liberty Mutual Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

To obtain reversal of a judgment based on error of the trial court in admission or exclusion of evidence, a party must show that the trial court erred and that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b). Therefore, we must review the record to determine whether the judgment was controlled by the testimony that should have been excluded.

Onishi, Hargrave, and Averett were the representatives of Gene Sears Supply Co., Sporting Goods, Inc., and Browning respectively. Each witness testified that the Gun Exchange had an unsecured account with

his company and that the Gun Exchange never paid its account. Hargrave and Averett also testified to their dealings with appellant.

The improper admission of the witnesses' testimony was not harmful because appellant's testimony alone was sufficient to establish constructive fraud. Evidence of the trade debts had already been established by the default judgment taken against the Gun Exchange. Further, evidence of appellant's dealings with the trade creditors was irrelevant to the constructive fraud allegation. Improper admission of evidence does not constitute reversible error when there is other competent evidence of the fact in question in the record. *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). We conclude that, although the trial court erred in admitting the testimony of Onishi, Hargrave, and Averett without a showing of good cause, such did not constitute reversible error. Point of error twenty is overruled.

■ In his twenty-first point of error appellant urges the trial court's error in admitting testimony with regard to the use of EJK Devco funds. EJK Devco is a corporation in which appellant is also the sole shareholder. Prior to trial appellant filed a motion in limine requesting that evidence concerning his use of EJK Devco funds to pay family medical expenses and automobile expenses be excluded. The trial court elected to decide the matter when and if the evidence was introduced.

During appellant's case-in-chief, Kathy Bufford, appellant's bookkeeper, testified that the funds of EJK Devco and the Gun Exchange were not commingled. She further testified that the funds of the Gun Store and the Gun Exchange were not commingled and that appellant kept all his funds separate. On cross-examination appellees' attorney asked if funds of EJK Devco were used to pay family medical expenses. Appellant's attorney objected, claiming the evidence was irrelevant. The trial court overruled appellant's objection. Ms. Bufford testified that, to her knowl-

edge, EJK Devco funds had been used for appellant's family medical expenses. On rebuttal, appellees recalled Ms. Bufford who, testifying from business records of EJK Devco, confirmed that EJK Devco funds were used for family medical expenses, and to purchase an automobile.

Appellant now claims the trial court erred in overruling his objection because the use of EJK Devco funds to pay personal medical expenses is irrelevant to appellees' constructive fraud allegation. We disagree. Appellant clearly "opened the door" to the evidence concerning the commingling of funds by eliciting testimony that funds of the various corporations and appellant's personal funds were not commingled. Any error in the admission of the evidence is not reversible because it was invited error. *See Zimmerman v. Zimmerman*, 488 S.W.2d 184, 187 (Tex.Civ. App.—Houston [14th Dist.] 1972, no writ.). Point of error twenty-one is overruled.

In his twenty-second point of error appellant asserts cumulative error caused by the errors set forth in appellant's points of error fifteen, sixteen, seventeen, eighteen, twenty, and twenty-one. When several errors are found but are not considered reversible, the sum of those errors could present cumulative error requiring reversal. We have found no error in appellant's points fifteen, sixteen, seventeen, and eighteen; therefore, we find no cumulative error. Point of error twenty-two is overruled.

The judgment of the trial court is affirmed.