NUMBER 13-00-749-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


IN THE INTEREST OF N.G., A.V., P.P., J.R.,

AND B.D., MINOR CHILDREN 

___________________________________________________________________


On appeal from the 135th District Court

of De Witt County, Texas.

__________________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Opinion by Justice Castillo


 Tonia Villa ("Villa") appeals from a judgment terminating her parental rights with respect to five of her children. (1) In her
single issue presented, Villa maintains that she was deprived of her right to counsel due to the failure of the trial court to
appoint an attorney ad litem to represent her at the time she appeared in opposition to the petition to terminate her parental
rights. We affirm. 

Factual and Procedural Background

 Villa lived with her boyfriend, Roy De La Rosa, and five children, N.G., A.V., P.P., J.R., and B.D., in Yoakum, Texas. 
According to testimony adduced at the final hearing terminating Villa's parental rights, on May 16, 1999, N.G. was late
returning from a party and Villa sent De La Rosa to bring her home. Upon their arrival, a quarrel ensued between N.G. and
Villa, whereupon De La Rosa slapped N.G. and told her to leave. As she left, N.G. told Villa that De La Rosa had sexually
abused her. Villa then called the police to report the alleged sexual abuse, as well as the fact that N.G. had run away. The
following day, Villa met N.G. at school and arranged and attended counseling with her. On May 18, 1999, the police and
the Texas Department of Protective and Regulatory Services ("TDPRS") intervened, removing all five children from the
home. TDPRS assumed emergency possession of the five subject children.

 On May 19, 1999, TDPRS filed a suit affecting parent-child relationship ("SAPCR"), seeking temporary managing
conservatorship of the children and, should reunification not materialize, termination of parental rights. The intervention
stemmed from statements made by N.G., A.V., and P.P. that De La Rosa had sexually abused them. (2)

The other children were removed from the home under the allegation of TDPRS that Villa failed to protect her children
after N.G. told her of the abuse. De La Rosa was cited as the father of B.D. (3)

On the same day, TDPRS obtained emergency orders naming it temporary managing conservator of the children. (4)

 

On May 27, 1999, an adversary hearing was held in which Villa appeared in person and represented herself. At the
conclusion of the hearing, the court appointed TDPRS temporary managing conservator of the children and granted Villa
physical possession of B.D., the child of the accused perpetrator, with the provision that TDPRS had the authority to take
possession of the child upon De La Rosa's release from jail. By order dated July 30, 1999, the trial court authorized
TDPRS to take possession of B.D., upon allegations that Villa failed to keep scheduled medical appointments for the
severely disabled child. (5)

 Subsequent status and permanency hearings were held without TDPRS returning the children to Villa. The termination of
parental rights hearing was held on July 12, 2000 and the order signed on October 27, 2000. Villa appeared for the
termination hearing and was represented by court-appointed counsel. 

 Villa was twenty-nine years old at the time of the termination hearing and was employed full time at Pizza Hut. Giving
birth to her first child at the age of sixteen, Villa had left three of her children with her father. The children returned to live
with her after he died. Three months thereafter, B.D. was born by caesarian section and required intensive medical
attention available only out of town. To be with B.D., Villa left her children with De La Rosa for three weeks. Villa
explained that she did not have "time to heal" because of her father's death, the surgery, and B.D.'s medical problems when
N.G. told her that De La Rosa had molested her. 

 At the termination hearing, the parties stipulated that De La Rosa was convicted of the offense of aggravated sexual assault
of N.G. and was sentenced to sixty years in prison. The trial court was advised that he had filed an appeal. At the time of
the hearing, De La Rosa had been indicted for the aggravated sexual assault of P.P. and for indecency with a child as to
A.V., which charges remained pending. 

 At the hearing, evidence was adduced about the Villas' roach-infested and unclean home that needed repairs. There was
also evidence presented indicating that Villa did not believe that De La Rosa had molested her daughters. It was also
proven that Villa took B.D., while in her possession after the adversary hearing, to visit De La Rosa in jail. Villa solicited
evidence from the department's witnesses that N.G. ran away from the foster home and engaged in sexual intercourse with
an adult male and the department did not pursue criminal charges for statutory rape. 
Discussion

 In a single issue, Villa asserts that the trial court erred by not appointing counsel to represent her at the adversary hearing,
which was the first time she first appeared in opposition to the petition to terminate her parental rights. She urges that no
evidence existed at the time of the hearing to show that "a substantial risk of danger existed" if the children were returned
to her. She adds that by the time she received court appointed counsel the children had been in foster care for five months
and, because she had no counsel, "her position in regard to the termination of her parental rights was such that many
weaknesses in her case could not be rectified by the time the termination hearing was held." Appellee TDPRS asserts that
Villa waived any error regarding the timing of the appointment and, even absent waiver, counsel was properly and timely
appointed.

 The Texas Family Code governs the appointment of an attorney in a parental rights termination proceeding. Section
107.013 provides, in relevant part:

(a) In a suit in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to
represent the interests of:

 (1) an indigent parent of the child who responds in opposition to the termination. . . 



Tex. Fam. Code. Ann. §107.013(a)(1) (Vernon Supp. 2001). When an indigent parent responds in opposition to the
termination of her parental rights, the trial court must appoint an attorney ad litem to represent her interests. Id.; In re
J.R.P., M.C. and R.P., Jr., 2001 Tex. App. LEXIS 5284, *3-4 (Tex. App.-Corpus Christi 2001, pet. filed); In re T.R.R., 986
S.W.2d 31, 37 (Tex. App.-Corpus Christi 1998, no pet.). 

Waiver of Error

 We first address the contention of TDPRS that Villa waived error in failing to object or otherwise call the trial court's
attention to the failure to appoint counsel at the adversary hearing. It is true that Villa did not urge her complaint to the trial
court. The purpose of an objection is twofold: (1) to notify the trial judge of the complaint, and (2) to preserve the
complaint for appellate review. Tex. R. App. P. 33.1(a); Ex parte Little, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994). 
Under our rules of procedure, error is generally waived if not timely objected to. Tex. R. App. P. 33.1. For example,
where a party fails to request the appointment of a guardian ad litem under section 107.011(b) of the family code and fails
to object to the trial court's neglect to appoint one, error is waived. Bott v. Bott, 962 S.W.2d 626, 630 (Tex. App.-Houston
1997, no pet.); Linan v. Linan, 632 S.W.2d 155, 157 (Tex. App.-Corpus Christi 1982, no writ) (op. on reh'g). We
conclude, likewise, that Villa's failure to request appointed counsel at the adversary hearing and her failure to present her
complaint to the trial court, and not for the first time on appeal, resulted in waiver of the error under Texas Rule of
Appellate Procedure 33.1(a).

 We note that Villa was appointed counsel by order dated October 13, 1999. Because there is no contention to the contrary,
we view the appointment as made at the time TDPRS decided to pursue termination of Villa's parental rights. SeeTex. R.
App. P. 38.1(f) (facts presented are accepted as true if not contradicted by the opposing party). According to Villa, by that
time, the children had been in foster care five months. At that point, Villa and her counsel had more than seven months to
prepare for the termination hearing held in this case. Moreover, Villa joined in the motion granted by the trial court to
extend its jurisdiction under Section 263.401 of the family code. (6) Granting the order, the trial court extended its
jurisdiction for the statutory maximum of 180 days. Villa had available to her an additional six months to prepare for and
defend against the petition for termination of parental rights as well as to present her objection to the trial court. 

Right to Counsel Did Not Attach at the Adversary Hearing

 Even assuming that Villa preserved error, the right to court appointed counsel in this case did not attach at the time of the
adversary hearing. Section 262.201 of the family code governs the procedure in a suit in which a governmental entity such
as the TDPRS has intervened and has removed a child from the possession of a parent. This section requires that the trial
court conduct a full adversary hearing within fourteen days after the children are removed from parental custody by a
governmental agency. Tex. Fam. Code Ann. § 262.201(a), (g) (Vernon Supp. 2001). If the child has not been returned to a
person entitled to possession and temporary orders, if any, have not been dissolved, the governmental agency has the
burden to present sufficient evidence that it should retain possession of the child due to the substantial risk of a continuing
danger if the child is allowed to return home. Id. § 262.201(b)(3) (Vernon Supp. 2001). If the court finds "sufficient
evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or
safety of the child and for the child to remain in the home is contrary to the welfare of the child," the court is required to
issue temporary orders for the safety and welfare of the child. Id. § 262.201(c). The trial court is also required to inform
each parent in open court that parental and custodial rights and duties may be subject to restriction or to termination unless
the parent is willing and able to provide the child with a safe environment. Id. The section 262.201(c) requirement that the
parent be informed that parental and custodial rights may be subject to termination indicates that at this early stage of the
proceedings termination of the parent-child relationship is not being determined. 

 The very nature of the adversary hearing is to mandate the entry of temporary orders governing the custody of the children,
pending a full adjudication of parental rights at the termination hearing. Although the TDPRS filed a SAPCR and included
a petition for termination of parental rights, at the time of the adversary hearing the agency was pursuing temporary orders
and not termination of parental rights. (7) 

 Moreover, although the Texas Legislature mandated in section 107.013 that the trial court appoint an attorney to represent
the interests of an indigent parent of the child who responds in opposition to the termination petition, the Legislature did
not include in that section a requirement that the appointment of counsel be made at or prior to the adversary hearing. Tex.
Fam. Code Ann. §107.013(a)(1) (Vernon Supp. 2001). Indeed, the section does not specify any particular time in which the
appointment of counsel must be made. Id.; In re J.R.P., 2001 Tex. App. LEXIS at *5 - 6. This contrasts sharply with the
requirement in section 107.012, which mandates appointment of an attorney ad litem to represent the interests of a child
involved in a termination proceeding immediately following the filing of a termination petition. Tex. Fam. Code Ann. §
107.012 (Vernon Supp. 2001); see In re M.J.M.L., 31 S.W.3d 347, 354 (Tex. App.-San Antonio 2000, pet. denied)
(comparing the requirements for appointment of an attorney ad litem under sections 107.012 and 107.013). It is a rule of
statutory construction that every word of a statute is presumed to have a specific purpose. Cameron v. Terrell & Garrett,
Inc., 618 S.W.2d 535, 540 (Tex. 1981). Likewise, every word excluded from a statute must be presumed to have been
excluded for a particular reason. Id. Accordingly, we find that the appointment of an attorney ad litem to represent the
indigent parent's interests did not attach at the initial adversary hearing stage in this case.

Conclusion

We find that Villa waived error concerning the failure to appoint counsel at the adversary hearing. Even if Villa had not
waived error, under the facts of this case, the mandatory right to counsel did not attach at the adversary hearing stage.
Accordingly, we deny appellant's sole issue presented and affirm the judgment of the trial court.

ERRLINDA CASTILLO

Justice





Do not publish.

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 29th day of November, 2001.

 











 

1 Another child born to Villa, J.L.G., did not live with her and was not a subject of the underlying suit.

2 At the time, these three children, all girls, were twelve, nine, and eight years old, respectively. The boy, J.R., was 7 years
old and B.D., the youngest girl, was one month old.

3 Four other respondent fathers were named for the remaining four children.

4 On the same day, by separate order the trial court appointed an attorney as attorney ad litem and guardian ad litem for the
children.

5 B.D. has a severe brain disorder, is in a perpetual vegetative state, is blind and deaf, and requires twenty-four hour care.

6 Section 263.401 of the family code authorizes the extension of the trial court's jurisdiction. Tex. Fam. Code Ann. §
263.401 (Vernon Supp. 2001).

7 In the original petition, which was the live pleading before the trial court at the time of the full adversary hearing, TDPRS
included a paragraph entitled "Request for Temporary Orders at Full Adversary Hearing," seeking "temporary orders." In
another paragraph entitled "Permanent Conservatorship and Support of the Children," TDPRS sought permanent managing
conservatorship "if the children cannot safely be reunified with either parent." Similarly, in the paragraph entitled
"Termination of Tonia Villa's Parental Rights," TDPRS sought termination if "reunification with the parent cannot be
achieved."