**Motion to Dismiss Granted; Affirmed and Memorandum Opinion filed August 2, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00649-CV
_____

### JOHN R. MCNATT, Appellant

### V.

### J.D. HOPKINS GROUP LLC, Appellee

On Appeal from the County Court at Law No. 3
Galveston County, Texas
Trial Court Cause No. 61,523

## MEMORANDUM OPINION

This is an appeal from a judgment awarding actual and consequential damages to J.D. Hopkins Group LLC. The issue we must decide is whether John R. McNatt suffered prejudice from an alleged instance of judicial misconduct.[1] For the reasons that follow, we affirm the trial court's judgment.

---

[1] John R. McNatt filed a notice of appeal on behalf of himself and the other defendant below, McNatt Contracting, Inc. The corporation was not affected by the trial court's judgment. During the

Gregory Hopkins is the managing partner of J.D. Hopkins Group LLC (collectively "Hopkins"). In December 2008, Hopkins entered into an oral agreement with McNatt for the restoration of a building on Galveston Island. The building had flooded during Hurricane Ike, and both its upper and lower levels required extensive repairs. Hopkins knew the quality of McNatt's work from an earlier reconstruction project, and he trusted that McNatt would be able to complete the job according to his expectations. To cover the early costs of labor and materials, Hopkins paid $75,000 to McNatt. When the repairs did not progress to his satisfaction, Hopkins terminated the relationship and hired another contractor to complete the job.

In his claim for damages, Hopkins alleged that McNatt had breached the contract by rendering services valued at no more than $10,000. Hopkins sought $65,000 in actual damages, plus additional damages from the loss of rental income. McNatt filed an answer generally denying the allegations.

At trial, there was a central dispute regarding McNatt's performance of the contract. McNatt was examined on such subjects as the supervision of subcontractors, the absence of receipts for materials, and the quantity of man hours reported as labor. Before McNatt could be excused as a witness, the trial court pressed McNatt for the production of additional evidence. The dialogue occurred in the presence of the jury, and it proceeded as follows:

> MR. ZEIN-ELDIN [Counsel for McNatt]:       I'll pass the witness, Your Honor.
>
> MR. SHABOT [Counsel for Hopkins]:       Nothing further, Judge.
>
> THE COURT:       All right.
>
> MR. SHABOT:       With that the Plaintiff rests.

---

pendency of this appeal, McNatt filed a motion requesting that the corporation be dismissed. We grant the motion to dismiss and consider McNatt's complaint in his individual capacity alone.

2

THE COURT:        All right.

                  Mr. McNatt, just one second.

THE WITNESS:      Sir?

THE COURT:        Sit back down.

THE WITNESS:      Oh.

THE COURT:        Are you able to obtain copies of the checks you gave to Wood Experts [one of the subcontractors]?

THE WITNESS:      Yes.

THE COURT:        And to your employee Frank [another subcontractor]?

THE WITNESS:      Yes.

THE COURT:        And regardless of why you didn't turn those over, I want you to bring those with you at 9:00 a.m. tomorrow morning, cancelled checks, okay?

THE WITNESS:      Now, some of those -- that may be difficult. My accountant has volumes of my old pay stubs, and the bank's not going to be able to shoot me faxes.

THE COURT:        Call them first thing when you get home. The case has been pending 567 days. Make that a priority, understand?

THE WITNESS:      Yes, sir.

THE COURT:        Step down.

                  All right. Plaintiff rests?

MR. SHABOT:       Yes, Judge.

THE COURT:        Anything from the Defendant?

MR. ZEIN-ELDIN: Judge, I could start some things, but I'm not sure the Court might want us to wait until the morning. Tell me, Your Honor, and again if I may just for my notes, you

3

want copies of the checks to Mr. [Frank] Deak and the copies of the checks to Wood Experts --

THE COURT: Yes, copies of the checks that are going to help the Jury explain where $75,000 went because it looks like we have 5,000 and change on materials. We have a calendar that's been admitted that shows maybe $20,000 of labor.

MR. SHABOT: Judge, could we do this outside the presence of the jury?

THE COURT: Yes. Well, maybe. All right. We'll reconvene, we'll reconvene at promptly 9:00 a.m. tomorrow morning.

With the jury removed, Hopkins voiced concern that the trial court was allowing McNatt to produce documents at the end of trial, in apparent conflict with the court's own docket control order. Hopkins further objected that those documents "were never produced" and, for purposes of trial, "[t]hey don't exist."

McNatt expressed a concern of a different kind:

MR. ZEIN-ELDIN: And, Your Honor, I have a concern at this point. I'm not sure what I'll ask about -- what I'll ask the Court to do about it, but I think we have a situation where the Court has made an unintentional comment on the evidence and has basically potentially biased this Jury against my client by virtue of the Court's comments. And, again, I'm not quite sure what to do at this point. I will with all due respect ask the Court to allow me to think about this for a bit. I know the Court is inclined to leave fairly shortly, anyway; but I'm a little bit puzzled as to where we go from here.

THE COURT: Well, the Court hasn't commented on the evidence. The Court is concerned that your client what I keep hearing hasn't produced documents that [sic] in a case that is more than 18 months old.

MR. ZEIN-ELDIN: Your Honor, again, with all due respect, my concern is that the Court has made statements in the presence of

4

|                   | the Jury which expressed the Court's opinion and seeming displeasure with my client and -- |
|-------------------|---|
| THE COURT:        | Well, no opinion has been expressed, Mr. Zein-Eldin. |
| MR. ZEIN-ELDIN:   | And, Your Honor, I, again with all due respect, the Court may not have intended it to be expressed as an opinion, but the impression which I have and I suspect the Jury may very well have, is that this is something which the Court found to be offensive from Mr. McNatt as opposed to something which, you know -- the Court obviously is entitled to do what the Court feels is appropriate but the impression that I think the Jury is left with was that Mr. McNatt had done something improper in the Court's opinion and as the gentleman who's wearing the black robe, your statements have a great -- |
| THE COURT:        | All right. If you think that, what I'll do is submit to me by 8:30 in the morning an instruction that you think would be appropriate for the Jury. I'll take that up at 8:30 a.m. If you think the Jury is entitled to an instruction to disregard anything that the Court has, you think, implied, then I'll take that up. |

In a hearing the following morning, McNatt renewed his concern that the trial court had commented on the state of the evidence while in the presence of the jury. The trial court interrupted McNatt's argument and stated that the jury would be instructed to disregard any comments made the day before. McNatt insisted that there were other matters to discuss because he had produced the documents requested in the trial court's order. The trial court determined, however, that the newly produced evidence would be excluded pursuant to Rule 193.6 of the Texas Rules of Civil Procedure. McNatt argued that this ruling put him in a "completely untenable situation" because the jury would be left with the impression that McNatt had not complied with the trial court's order. McNatt moved for a mistrial, which the trial court denied.

5

The trial resumed, but before the defense could call its first witness, the trial court issued the following instruction to the jury:

> As I had informed you at the beginning, you're bound by the instructions of the Court that you were given at the beginning, as well as those that may come along during the case. The next instruction is you as a Jury are instructed to disregard any comments you heard from the Bench late yesterday afternoon regarding any suggestion that the Defendant produce or turn over copies of any documents. You're to disregard anything that you may have implied from the Court's instructions.

A similar instruction was included in the trial court's charge to the jury: "Jury is to disregard any comment(s) from the Bench regarding any issue related to Defendant not producing documents, check stubs, etc."

After all the evidence had been presented, the jury returned a verdict against McNatt in the amount of $43,837.54. McNatt now appeals, challenging in a single issue the propriety of the trial court's comment and whether it resulted in an improper judgment.

A trial judge is afforded wide discretion to express himself during the course of a proceeding. *Bott v. Bott*, 962 S.W.2d 626, 631 (Tex. App.—Houston [14th Dist.] 1997, no pet.). The judge may intervene to maintain control in the courtroom, to expedite the trial, or even to prevent what it considers to be a waste of time. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (per curiam). The judge should refrain, though, from making any comments aimed at the weight of the evidence, whether the comments be direct or indirect. *Bott*, 962 S.W.2d at 631; *Pitt v. Bradford Farms*, 843 S.W.2d 705, 707 (Tex. App.—Corpus Christi 1992, no writ). McNatt complains that the trial judge violated this principle in this case, and that he suffered prejudice as a result.

To reverse a judgment on the basis of judicial misconduct, we must find both judicial impropriety and probable prejudice to the complaining party. *See Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986); *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). If we find that the trial judge acted

improperly, we must examine the record as a whole to determine if this impropriety resulted in harm. *Bott*, 962 S.W.2d at 631.

We agree with McNatt that it was inappropriate for the trial court to discuss the absence of evidence in the presence of the jury. *Cf.* Tex. R. Civ. P. 277 ("The court shall not in its charge comment directly on the weight of the evidence . . . ."). The responsibility for filling evidentiary voids belongs to the advocate, not the judge. *See Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("A judge should be fair and impartial and not act as an advocate for any party."). Nevertheless, after considering the record as a whole, we are not persuaded that McNatt suffered any harm from the trial court's error. The trial court twice instructed the jury to disregard its comments; the first instruction was made orally after trial resumed from recess, and the second appeared in the court's charge to the jury. We presume that the jury obeys a court's curative instruction, and that the instruction is sufficient to cure any prejudice. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987); *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex. App.—Houston [1st Dist.] 1994), *writ denied*, 907 S.W.2d 452 (Tex. 1995) (per curiam).

McNatt has suggested that, despite the instruction, the trial court's comments necessarily created an adverse opinion of him in the minds of the jury. His briefing contains no authority, however, that the comments were so blatantly biased or prejudicial as to render a curative instruction ineffective. We conclude that the trial court's statements, though improper, do not constitute incurable commentary on the weight of the evidence. *Cf. Dow Chem. Co.*, 46 S.W.3d at 239–41 (finding no evidence of judicial bias, despite trial court's instruction to "move on . . . so that we can get this case to the jury"); *Sabine & E. Tex. Ry. Co. v. Broussard*, 75 Tex. 597, 598, 12 S.W. 1126, 1126 (1890) (finding no reversible error, despite trial court's comment that time had been "unnecessarily consumed" and that testimony had not been "calculated to enlighten court or jury," where charge instructed that jury, rather than judge, was to determine the weight and credibility of

7

the evidence); *Capellen v. Capellen*, 888 S.W.2d 539, 547 (Tex. App.—El Paso 1994, writ denied) (finding judge's statement that "I don't think you're right" to be only "mildly prejudicial" and not so incurable as to result in harm); *Brazos River Auth. v. Berry*, 457 S.W.2d 79, 80–81 (Tex. App.—Tyler 1970, writ ref'd n.r.e.) (finding that error would have been harmless, if not waived, despite trial court expressing personal opinion on a contested valuation issue in a condemnation case). Because the jury received an instruction to disregard, we conclude that McNatt suffered no harm. *See State v. Wilemon*, 393 S.W.2d 816, 818 (Tex. 1965).

McNatt's sole issue is overruled, and the judgment of the trial court is affirmed.


/s/     Adele Hedges
             Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.